[Cite as *State v. Norris*, **2016-Ohio-5729.**]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2015-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-316 |
| | : | |
| ALEX NORRIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of September, 2016.

. . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Assistant Clark County Prosecuting Attorney, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 111 West First Street, Suite 518, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-appellant, Alex Norris, appeals from his conviction in the Clark County Court of Common Pleas after a jury found him guilty of trafficking heroin, possessing heroin, and having weapons while under disability. Specifically, Norris challenges the trial court's decision overruling his motion to suppress evidence seized at his residence as the result of a search warrant that Norris claims was issued based on illegally obtained evidence and insufficient probable cause. Norris also contends that the trial court erred in admitting certain text messages into evidence during his jury trial, claiming the text messages were inadmissible hearsay. For the reasons outlined below, the judgment of the trial court will be affirmed.

### Facts and Course of Proceedings

**{¶ 2}** On May 5, 2014, the Clark County Grand Jury returned an indictment charging Norris with one count of trafficking heroin in violation of R.C. 2925.03(A)(2), one count of possessing heroin in violation of R.C. 2925.11(A), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). The charges stemmed from allegations that Norris trafficked and possessed heroin in an amount greater than or equal to 50 grams, but less than 250 grams. The trafficking and possession charges each included a firearm specification and all three charges included forfeiture specifications. The charges arose after officers executed a search warrant and found 95.09 grams of heroin, multiple items of drug-trafficking paraphernalia, and three firearms in Norris's residence located at 149 West Parkwood Avenue, Springfield, Ohio.

**{¶ 3}** Norris pled not guilty to the charges and subsequently filed a motion to

suppress. In the motion, Norris argued, among other things, that the affidavit underlying the search warrant did not establish probable cause to search his residence because the affidavit contained a false statement and was based upon illegally obtained evidence. On October 24, 2014, the trial court held a hearing on the motion, during which the following information was elicited.

{¶ 4} On the night of April 23, 2014, the Springfield Police Department received an anonymous tip that a murder suspect named Tyrin Hawkins was in the basement of Norris's residence with a shotgun. In response, several officers were dispatched to Norris's residence. One of the officers, Sergeant Doug Pergram, testified that he knocked on the door of Norris's residence and obtained verbal consent from Norris's wife, Sonya Swain Norris, to search the residence for Hawkins.

{¶ 5} Officer Jason Phillips testified that he was one of the officers who searched Norris's residence for Hawkins. Philips testified that as he searched the basement, he entered a small room wherein he saw a table with various items lying on it in plain view, including a small amount of marijuana, a scale covered with white residue, a box of empty sandwich baggies, and a cigar box. According to Phillips, the cigar box had part of a residue-laden plastic baggie sticking out of its closed lid. Phillips testified that based on his training and experience, he believed that the residue on the plastic baggie was cocaine. Upon seeing the baggie, Phillips testified that he lifted the lid off the cigar box, picked up the baggie, and observed a white, rock-like substance inside, which was later tested and found to be approximately one ounce of heroin. Phillips testified he then placed the baggie back into the cigar box, but could not remember whether he closed the lid or whether the plastic baggie was still sticking out of the box.

**{¶ 6}** Following Phillips's observations, the officers secured Norris's residence while Phillips prepared an affidavit for purposes of obtaining a search warrant. The affidavit prepared by Phillips stated, in pertinent part, the following:

Officers searched the residence for Hawkins, and did not locate him or any other person. While searching the residence, officers observed in plain view in the basement, in a back room on a table, a small amount of marijuana, and a cigar box with a bag sticking out of it containing a white powder that appeared to be cocaine, and a scale was also on the table with white residue consistent with cocaine. Based upon this officer's training and experience, the bag appeared to contain approximately one ounce of cocaine. This amount of cocaine is far in excess of any typical user amount, and is very highly indicative of large scale drug trafficking. A box of empty sandwich bags was also on the table.

State's Exhibit No. 9 - Search Warrant/Affidavit for Search Warrant (Apr. 23, 2014), p. 2-3, ¶ 4.

**{¶ 7}** Based on the supporting affidavit, the trial court ultimately signed a search warrant authorizing the officers to search Norris's residence for drugs and any evidence of trafficking or possession of drugs. Once the search warrant was obtained, officers from the narcotics unit searched Norris's residence. However, before conducting the search, the narcotics unit walked through the residence and took photographs and a video of the residence in its original condition. The video and images were admitted into evidence at the suppression hearing. The images and video depict the marijuana, digital scale, box of sandwich baggies, and cigar box observed by Phillips. However, the

images did not show a baggie partially sticking out of the closed cigar box. In addition, Detective William Speakman and Lieutenant Michael Kranz of the narcotics unit testified that they did not observe a plastic baggie sticking out of the cigar box.

{¶ 8} Throughout the hearing, Norris contended that Officer Philips contrived the plain-view observation of the residue-laden plastic baggie sticking out of the cigar box for purposes of securing a search warrant. However, after considering the testimony and evidence presented at the suppression hearing, the trial court found that even if the baggie of heroin had not been lawfully discovered as alleged in the affidavit, absent that allegation, the remaining contents of the affidavit provided probable cause to search the residence for evidence of drugs and drug trafficking. Accordingly, the trial court overruled Norris's motion to suppress[1] and the matter proceeded to a jury trial.

{¶ 9} As part of its case in chief, the State presented several incriminating text messages sent from and received by an iPhone that allegedly belonged to Norris. The iPhone was marked as Exhibit 33-A. Detective Gerrald Mitchell of the Springfield Police Department's Narcotics Unit testified that once a search warrant was obtained for the iPhone, he extracted data from it using a universal forensic extraction device known as a Cellebrite. Mitchell testified that he is a certified Cellebrite Logical Operator and Physical Analyst and that he has performed 300 extractions from cell phones and other devices in the past year.

{¶ 10} In addition to extracting data, Mitchell testified that he creates reports of the

---

[1]To avoid a conflict, the trial judge who issued the search warrant for Norris's residence, Judge O'Neill, recused himself from ruling on Norris's motion to suppress. Thereafter, Judge Rastatter was assigned to the matter and issued the decision overruling Norris's motion to suppress.

extracted data using a Physical Analyzer, which is software that organizes the data and indicates what type of data has been extracted, i.e., text messages, images, e-mails, etc. Mitchell testified that he used the Physical Analyzer to create a report of the text messages on Norris's iPhone, many of which were discussed at trial over Norris's objection. Redacted copies of the text message extraction reports were also admitted into evidence as exhibits for the jury to consider. Each exhibit displayed specific portions of text message conversations that were extracted from the iPhone at issue. The following information was included in the exhibits:

State's Exhibit No. 42

To "Cena" 4/8/2014 8:40:20 PM:      What's your excuse this time Tylor?

To "Cena" 4/9/2014 5:31:41 PM:      Where U at? And do you have your money?

To "Cena" 4/9/2014 5:50:16 PM:      U fugazi! I showed my horse friends that ID and its old. Expired. So whenever U bring your bread we can settle and do business again. But right now will wait til Friday until U can think of another lie. Oh and don't try to get at Jerry or Tyler and definitely not Marlowe! Your name is shit right now. Good luck. I can't

play the sucks no more.

To "Cena" 4/14/2014 12:47:17 PM:     Can't get it together yet?   Don't know how much longer I can hold this raw for U…

State's Exhibit No. 43

From "Ty&Tiff/matt" 4/10/2014 9:13:03 PM:     You got a half

To "Ty&Tiff/matt" 4/10/2014 9:15:41 PM:     Yes

From "Ty&Tiff/matt" 4/11/2014 11:10:28 AM:     You got a half

To "Ty&Tiff/matt" 4/11/2014 11:15:41 AM:     Yes

State's Exhibit No. 44

From "Jo-EL" 4/10/2014 10:12:55 AM:     Anything good today.

To "Jo-El" 4/10/2014 10:17:22 AM:     Not yet

From "Jo-El" 4/11/2014 5:04:09 PM:     Hey man wasnt tryin to say that stuff was bad. I probably just got some that wasnt mixed all the way.  U think i could swing over and grab some then that would b it. I'm going to work for my dad up north and wont b back for two days. Dont wanna have nothing when I am there.

To "Jo-El" 4/11/2014 5:08:45 PM:       Ok.

State's Exhibit No. 45

| | |
|---|---|
| To "Winnie & Eric" 4/15/2015 8:36:23 PM: | Got the remix. See U in a hour. How is that other going? |
| From "Winnie & Eric" 4/15/2015 8:38:46 PM: | Going |
| From "Winnie & Eric" 4/15/2015 10:26:58 PM: | How soon till you come by |
| To "Winnie & Eric" 4/15/2015 10:28:09 PM: | Can U come and get it. I have no transport. |
| From "Winnie & Eric" 4/15/2015 10:30:18 PM: | Yes |
| To "Winnie & Eric" 4/15/2015 10:30:54 PM: | Ok, I will be up |
| From "Winnie & Eric" 4/23/2015 11:54:52 PM: | By shell station on line stone just pulled in town |
| To "Winnie & Eric" 4/24/2015 12:14:50 AM: | Just don't forget about me sitting up here want to make some your money off profits with my wake ups |

State's Exhibit No. 46

| | |
|---|---|
| To "Guns&butter" 4/20/2014 11:21:08 AM: | Lol. Funny style hypocrites. Just stay focused on the skirts!  Ha!  I will be in the |

lab.

State's Exhibit No. 47.

| | |
|---|---|
| From "Fam-fam" 4/14/2014 1:16:05 PM: | FAM WYD |
| To "Fam-fam" 4/14/2014 2:31:51 PM: | Labratory (sic) |
| From "Fam-fam" 4/15/2014 11:50:27 AM: | Meet me at the lab |
| To "Fam-fam" 4/15/2014 11:59:39 AM: | Yep. |

{¶ 11} In addition, the State provided Detective Mitchell with the iPhone marked as Exhibit 33-A at trial and Mitchell read aloud to the jury a message contained on the phone itself. The message he read was sent on April 23, 2014, to a contact named "Ty&Tiff/matt." The content of the message was: "That's not cool. I got pure stuff, but it's expensive. 200 a G, but it's fantastic. Honest." Trial Trans. Vol. III (Jan. 29, 2015), p. 607.

{¶ 12} Following the presentation of evidence, the jury deliberated and found Norris guilty as charged. The trial court then merged the trafficking and possession charges and sentenced Norris to a mandatory prison term of nine years for those offenses, plus one year for the firearm specification. Norris was also sentenced to 30 months in prison for having weapons under disability, which was ordered to run consecutively to the aggregate ten-year prison term.

{¶ 13} Norris has appealed from his conviction, raising two assignments of error for review.

**First Assignment of Error**

{¶ 14} Norris's First Assignment of Error is as follows:

THE TRIAL COURT INCORRECTLY OVERRULED APPELLANT'S MOTION TO SUPPRESS.

**{¶ 15}** Under his First Assignment of Error, Norris contends the trial court erred in overruling his motion to suppress the evidence seized as a result of the search warrant issued for his residence. Norris claims the evidence should have been suppressed because the affidavit in support of the search warrant was based, in part, on evidence that was discovered through an illegal search, i.e., the heroin inside the cigar box. He also claims the affidavit as a whole failed to establish probable cause for the search warrant to be issued. We disagree.

**{¶ 16}** In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592, 639 N.E.2d 498. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

**{¶ 17}** The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution require police to obtain a search warrant based on probable cause prior to conducting a search unless the search falls within an exception to this requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998); *State v. Adams,*

144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181. Search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and/or things to be seized. *State v. Jones*, 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 11. Evidence derived from a search or seizure that violates the Fourth Amendment is subject to exclusion at trial. *Adams* at ¶ 181, citing *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). (Other citations omitted.)

{¶ 18} In "determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 19} When reviewing the sufficiency of probable cause for the issuance of a search warrant, an appellate court should not substitute its judgment for that of the magistrate by conducting a de novo determination of sufficiency. *Id.* at paragraph two of the syllabus. Rather, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," and it "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

{¶ 20} "Ordinarily, 'a probable cause inquiry must be confined to the four corners

of the affidavit[.]' " *State v. Leibold*, 2d Dist. Montgomery No. 25124, 2013-Ohio-1371, ¶ 31, quoting *State v. Klosterman*, 114 Ohio App.3d 327, 333, 683 N.E.2d 100 (2d Dist.1996). However, " '[a] search warrant affidavit that is facially sufficient may nevertheless be successfully attacked if the defendant can show by a preponderance of the evidence that the affiant made a false statement intentionally, or with reckless disregard for the truth.' " *Id.*, quoting *State v. Stropkaj*, 2d Dist. Montgomery No. 18712, 2001 WL 1468905, *2 (Nov. 16, 2001), citing *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) and *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992). However, " '[e]ven if the affidavit contains false statements [or omissions] made intentionally or recklessly, a warrant based on the affidavit is still valid unless, "with the affidavit's false material set to one side [or with the omissions included], the affidavit's remaining content is insufficient to establish probable cause[.]" ' " *State v. Sells*, 2d Dist. Miami No. 2005-CA-8, 2006-Ohio-1859, ¶ 11, quoting *Waddy* at 441, quoting *Franks* at 156.

**{¶ 21}** Similarly, "[t]he U.S. Supreme Court * * * has held that, after excising tainted information from a supporting affidavit, 'if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid.' " *State v. Bell*, 2d Dist. Greene No. 2012 CA 15, 2012-Ohio-4853, ¶ 14, quoting *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). The ultimate inquiry " 'is not whether the underlying affidavit contained allegations based upon illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause.' " *Id.*, quoting *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 17. *See also*

*State v. Booker*, 2d Dist. Montgomery No. 11255, 1989 WL 140201, *4 (Nov. 20, 1989) (recognizing that "[i]f sufficient untainted evidence is present in the warrant affidavit to establish probable cause, the warrant is valid").

{¶ 22} As previously noted, Norris contends the evidence obtained through the search warrant of his residence was tainted because the affidavit underlying the search warrant was based, in part, on the heroin discovered in the cigar box, which Norris claims was discovered as the result of an illegal search. This argument hinges on Norris's assertion that Officer Phillips did not properly discover the baggie of heroin in plain view.

{¶ 23} An item is within the plain-view doctrine when its incriminating nature is "immediately apparent" to the police officer who comes into contact with it through lawful activity. *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). " 'Immediately apparent' means the police have probable cause to associate an object with criminal activity. An officer may rely on training and experience in recognizing evidence of a crime." (Citations omitted.) *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 9.

{¶ 24} In this case, Norris argues the incriminating nature of the plastic baggie inside the cigar box was not immediately apparent to Officer Phillips. At the suppression hearing, Officer Phillips provided conflicting testimony on this matter. While Phillips testified that based on his prior experience he believed that the residue on the plastic baggie sticking out of the cigar box was cocaine, he also testified on cross examination that it was not immediately apparent that the baggie sticking out of the cigar box was "illegal," so he lifted up the lid of the cigar box to be sure. *See* Suppression Hearing Trans. (Oct. 24, 2014), p. 43-44.

{¶ 25} However, even if the plain-view doctrine does not apply to the baggie of heroin, and even if Phillips discovered the heroin in the cigar box through an illegal search, the result would be to excise any reference to the heroin in the affidavit underlying the search warrant. Without mentioning the heroin in the cigar box, the affidavit still indicates that Phillips lawfully observed in plain view a digital scale covered with white residue, a small amount of marijuana, and a box of empty sandwich baggies, items that are indicative of illegal drug activity. We find that this information alone provided the trial court with a substantial basis for concluding that probable cause existed to search Norris's residence for evidence of drugs and drug trafficking. Therefore, Norris's motion to suppress the evidence obtained from the search warrant was properly overruled.

{¶ 26} Norris's First Assignment of Error is overruled.


**Second Assignment of Error**

{¶ 27} Norris's Second Assignment of Error is as follows:

THE TRIAL COURT INCORRECTLY ALLOWED HEARSAY EVIDENCE, DENYING APPELLANT HIS RIGHT TO CONFRONT A WITNESS AGAINST HIM.

{¶ 28} Under his Second Assignment of Error, Norris contends the text messages admitted into evidence at trial were inadmissible hearsay and should have been excluded. Norris specifically contends that the text messages do not fall under the business records exception to the hearsay rule in Evid.R. 803(6), because the State failed to have a records custodian appear at trial and authenticate them. We again disagree.

{¶ 29} "[A] trial court is vested with broad discretion in determining the admissibility

of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). Evid.R. 802 provides that hearsay is inadmissible except as otherwise provided by the Rules of Evidence. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶ 30} A statement is not hearsay if it "is offered against a party and is his own statement, in either his individual or a representative capacity * * *." Evid.R. 801(D)(2)(a). This court has recognized that text messages can be admitted in situations involving a statement by a party opponent. *State v. Irwin*, 2d Dist. Montgomery No. 26224, 2015-Ohio-195, ¶ 19, citing *State v. Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233 (8th Dist.). Moreover, multiple courts have held that text messages sent by a defendant are not hearsay pursuant to Evid.R. 801(D)(2). *State v. Davis*, 2016-Ohio-1166, ___ N.E.3d ___ (12th Dist.); *State v. Bickerstaff*, 11th Dist. Ashtabula No. 2014-A-0054, 2015-Ohio-4014, ¶ 15; *State v. Miller*, 1st Dist. Hamilton No. C-130774, 2015-Ohio-330, ¶ 17; *State v. Shaw*, 2013-Ohio-5292, 4 N.E.3d 406, ¶ 43 (7th Dist.); *Roseberry* at ¶ 73.

{¶ 31} A statement is also not hearsay when offered for a purpose other than to prove the truth of the matter asserted, e.g., to show its effect on the listener. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶s 118, 122, citing *State v. Davis*, 62 Ohio St.3d 326, 343, 581 N.E.2d 1362 (1991). Therefore, " 'testimony which explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities, is not hearsay.' " *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-

2128, 767 N.E.2d 166, ¶ 59, quoting *State v. Maurer*, 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984).

**{¶ 32}** Multiple courts have held that text messages received on a defendant's cell phone are not hearsay when the messages are not offered for the truth of the matter asserted.  *See State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369 (4th Dist.) (incriminating text messages received on the defendant's cell phone were extracted by a forensic computer specialist from the Ohio State Highway Patrol and the court held the messages were not hearsay because they were not offered to prove the truth of the matter asserted, but rather to explain the defendant's activities and give context to the defendant's responses); *Miller* at ¶ 17 (text messages sent to the defendant were not hearsay because they were not offered for the truth of the matter asserted, because they "put in context [defendant's] statements about being angry").

**{¶ 33}** Nevertheless, before text messages may be admitted, they must be properly authenticated.  *Irwin* at ¶ 20.  The threshold standard for authenticating evidence is low.  *State v. Wiley*, 2d Dist. Darke No. 2011 CA 8, 2012-Ohio-512, ¶ 11.  In this regard, "Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be." *State v. Simmons*, 2d Dist. Montgomery No. 24009, 2011-Ohio-2068, ¶ 12.  Evid.R. 901(B) provides examples of numerous ways that the authentication requirement may be satisfied, the most common of which is testimony that a matter is what it is claimed to be under Evid.R. 901(B)(1).  *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 30.

**{¶ 34}** " '[I]in most cases involving electronic print media, i.e., texts, instant

messaging, and e-mails, the photographs taken of the print media or the printouts of those conversations are authenticated, introduced, and received into evidence through the testimony of the recipient of the messages.' " *Irwin*, 2d Dist. Montgomery No. 26224, 2015-Ohio-195 at ¶ 21, quoting *Roseberry*, 197 Ohio App.3d 256, 2011-Ohio-5921, 967 N.E.2d 233, at ¶ 75. In *Roseberry*, the Eighth District Court of Appeals noted that the state could have properly admitted text messages from the defendant through the victim's testimony, "because she was the recipient of the text messages, had personal knowledge of the content, and could [identify] the sender of the messages." *Roseberry* at ¶ 75.

**{¶ 35}** Norris, however, relies on *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057 for the proposition that Detective Mitchell's testimony regarding the text messages was insufficient to authenticate the text messages as required under Evid.R. 803(6). That rule is an exception to the prohibition against hearsay, and to satisfy it, "the record must be one regularly recorded in a regular business activity; must have been entered by a person with knowledge of the act, event, or transaction concerned; must have been recorded at or near the time of the transaction; and, a foundation must be laid by a 'custodian' of the record or by some other qualified witness." (Citations omitted.) *State v. Martin*, 2d Dist. Montgomery No. 20383, 2005-Ohio-209, ¶ 26.

**{¶ 36}** In *Hood*, the State introduced cell phone records that were subpoenaed from a cell phone company, and instead of having a records custodian authenticate the records at trial, the State had the detective who subpoenaed the records testify regarding the subpoena process. *Id*. at ¶ 17. The Supreme Court held that the detective's testimony was insufficient to authenticate records under Evid.R. 803(6) because the

detective did not prepare or keep the phone records as part of a regularly conducted business activity.   *Id.* at ¶ 40-42.

**{¶ 37}** The present case is distinguishable from *Hood* because the text messages in this case are not hearsay statements that require an exception to the hearsay rule to be admitted as evidence.   The text messages sent by Norris are not hearsay because they are statements by a party opponent under Evid.R. 801(D)(2), and the text messages received by Norris are not hearsay because they are statements that were not offered for the truth of the matter asserted, but rather to put Norris's responding texts into context. Moreover, a portion of the text messages can arguably be considered verbal acts, which are not hearsay because they have independent legal significance in that they demonstrate an offer or agreement was made between Norris and his contacts, and thus are relevant without regard to the truth of the matter asserted in the messages.   *State v. Williams*, 38 Ohio St.3d 346, 348, 528 N.E.2d 910 (1988) ("[a] statement is not hearsay if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents"); *Miller v. Med. Mut. of Ohio*, 5th Dist. Coshocton No. 2015CA0007, 2016-Ohio-482, ¶ 34, citing 1 Glen Weissenberger, *Ohio Evidence*, Section 801.6 (1995) ("[v]erbal acts have independent legal significance and are relevant without regard to their truth"); *In the Matter of Erwin*, 4th Dist. Hocking No. 87 CA 25, 1988 WL 118697, *2 (Nov. 3, 1988), (an example of a verbal act is a statement which shows that an agreement was made).   For example, in one of the text messages Norris accepted his contact's offer to come over and grab some "stuff" that the contact previously explained "wasn[']t mixed all the way."   State's Exhibit No. 44.

**{¶ 38}** The present case is also distinguishable from *Hood* because the text

messages at issue were not subpoenaed from a cell phone company. Rather, Detective Mitchell testified that during the course of the investigation, he extracted data from Norris's iPhone himself using a Cellebrite device. He also testified that for purposes of trial, he created a report of the text messages from the extracted data using Physical Analyzer software. Therefore, it is clear from Mitchell's testimony that the report containing the text messages was not a regularly kept business record. *See State v. Wilson*, 5th Dist. Holmes No. 15CA015, 2015-Ohio-5588, ¶ 50-51 (finding that text messages recovered from the defendant's cell phone by a forensic specialist during the criminal investigation were not business records because the text messages were not recovered from the cellular carrier, but from the phone itself). Accordingly, the hearsay exception in Evid.R. 803(6) and its authentication requirements do not apply to the text messages in this case.

{¶ 39} While the typical means of authenticating text messages, i.e., having the recipient of the text messages testify and identify the sender, was not implemented here, we nevertheless find the text messages were properly authenticated, as the State presented testimony and evidence that sufficiently linked Norris to the iPhone that contained the text messages at issue. Specifically, Detective William Speakman testified that he had a video-recorded conversation with Norris outside his residence prior to the execution of the search warrant, and he claimed that during their conversation, Norris's phone rang on two occasions with a ringtone that sounded like barking dogs. Speakman testified that he permitted Norris to answer his phone, which Speakman described as a smartphone that may or may not have been an iPhone.

{¶ 40} In addition, Detective Mitchell testified that he was present at the scene

during Detective Speakman's recorded conversation with Norris, and that he observed Norris answer an iPhone that had a barking-dogs ringtone. Mitchell further testified that during the same conversation, he heard Norris make a statement indicating that Norris was going to give the iPhone to his wife. Mitchell also identified the iPhone marked as Exhibit 33-A, testified that its ringtone was set to "barking dogs," and then played the ringtone for the jury.

{¶ 41} The video-recorded conversation testified to by Speakman and Mitchell was played for the jury and it confirmed the detectives' testimony. Although the video recording was dark, the audio of the barking-dogs ringtone and Norris asking the officers if he could answer his phone could be heard. The first time Norris answered his phone, he was speaking to a person named "Winnie," which is the name of one of the contacts in the text message extraction report prepared by Detective Mitchell. The second time Norris answered his phone he indicated that he was speaking to his son, and Norris can be heard on the recording telling his son that he was going to give "her" the phone that he was using.

{¶ 42} Speakman testified that after he conversed with Norris, Officer Phillips took Norris to his cruiser to detain him while the narcotics unit executed the search warrant. Officer Phillips testified that while Norris was being detained, he permitted Norris to speak to his wife, Sonya Swain Norris, and that he observed Norris hand her one of two cell phones in his possession. Lieutenant Michael Kranz testified that after Norris was arrested, he collected a cell phone from a woman named Sonya outside Norris's residence because he was advised by another officer that a cell phone had been handed to her. Kranz identified the phone he collected as the iPhone marked as Exhibit 33-A,

the same phone with the barking-dogs ringtone that Detective Mitchell extracted the incriminating text messages from.

{¶ 43} Taken together, the foregoing testimony and evidence sufficiently indicate that Norris was the owner of the iPhone from which the text messages at issue were extracted.   Accordingly, we find the trial court did not abuse its discretion in admitting the text messages into evidence, as the messages were properly authenticated and not hearsay.

{¶ 44} Norris's Second Assignment of Error is overruled.

## Conclusion

{¶ 45} Having overruled both of Norris's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FROELICH, J., concur.

Copies mailed to:

Megan M. Farley
Charles W. Slicer, III
Hon. Richard J. O'Neill