[Cite as *State v. Glenn*, 2022-Ohio-3159.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29235 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-1840 |
| | : | |
| SAMUEL G. GLENN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of September, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

DANIEL F. GETTY, Atty. Reg. No. 0074341, 46 East Franklin Street, Centerville, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Samuel G. Glenn appeals from his convictions after he was found guilty of rape (child under 13) and gross sexual imposition (GSI) and sentenced to life in prison. For the reasons that follow, the judgment of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 2} On November 24, 2014, Mother was hosting a small get-together at her Ferndale Avenue home at which she, three of her children, her then-fiancé Antonio, and Glenn (also known as Stone) were present. That evening, while Mother was cooking in the kitchen and the children were playing on the stairs, Glenn, who was upstairs in Mother's bedroom, summoned the middle child, A.S., to come see him. A.S. testified that she went up to use the bathroom and then went into her mother's room to see what Glenn needed.

{¶ 3} When A.S. entered the bedroom, Glenn was alone, lying on the bed with the light off. He asked A.S. to come close, and when she complied, he unzipped her pants, pulled them down, "and put his hands in [her] pants." Trial Tr. at 43. A.S. testified that he then put his fingers in her vagina. Trial Tr. at 44-45, 54-55, 64. Because she felt very uncomfortable by Glenn's actions, A.S. made up an excuse to extricate herself from the situation: she told him that she had been previously physically abused by her father and then began to cry. Glenn relented, and A.S. was able to go back downstairs. Glenn left soon after.

{¶ 4} While there was differing testimony as to who informed Mother of the incident and when (A.S. testified that she came downstairs and told her mother, while her older sister and Mother claimed that the older sister broke the news), no immediate action was

taken. Mother did not call the police, but instead asked her fiancé, Antonio, to confront Glenn. Approximately a week later, Glenn was again at the Ferndale residence and, when confronted by Antonio, things got heated. Mother testified that Glenn told her, "That's crazy. I [can't] believe she would say I would do something like that." Trial Tr. at 89. Glenn left before a fight broke out and was not seen again by the family.

{¶ 5} The family kept the abuse to themselves for years, and as a result, A.S. began to experience mental health complications. Mother testified that "[A.S.] would say that * * * she can't believe God put her here on earth for people to do certain things to her. She didn't want to live." Trial Tr. at 89. After mental breakdowns and multiple suicide attempts, in April 2020, Mother took A.S. to Dayton Children's Hospital CARE House for treatment. There, while speaking with clinicians, A.S. disclosed the abuse. Jennifer Knisley, a social worker who spoke with A.S., testified that A.S. "talked about when she was about ten years old that Uncle Stone called her up to her mom's room. She talked about him undoing her pants, sticking his hand inside her pants and underwear, put his fingers inside her vagina. She said it felt really uncomfortable." Trial Tr. at 163. A.S. was diagnosed with post-traumatic stress disorder (PTSD) and major depressive disorder (MDD).

{¶ 6} On September 1, 2020, Glenn was indicted on one count of rape of a child under 13, a felony of the first degree, and one count of GSI, a felony of the third degree. The matter proceeded to trial on July 12, 2021, where the jury heard testimony from A.S., her older sister, Mother, detectives, various clinicians from Dayton Children's, and Glenn. Ultimately, the jury found Glenn guilty as charged, and the court sentenced him to life in

prison for rape and five years for GSI. The five-year sentence was ordered to run consecutively to the life sentence. Glenn was also ordered to register as a Tier III sex offender.

{¶ 7} Glenn has filed a timely appeal with three assignments of error.

## II.    Admission of Evidence

{¶ 8} In his first assignment of error, Glenn argues that the trial court erred by denying his request to introduce A.S.'s *entire* CARE House interview into evidence.

{¶ 9} Decisions regarding the admissibility of evidence are in the discretion of the trial court and will be upheld unless an abuse of discretion can be demonstrated. *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50; *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. "Abuse of discretion has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2d Dist. Clark No. 11CA0021, 2012-Ohio-2664, ¶ 24. A court's decision is unreasonable "if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process persuasive." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment, Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 10} Throughout this case, Glenn has alleged that the CARE House interview would highlight inconsistencies in A.S.'s statements. He maintains that A.S. told her

interviewer(s) that he *tried* to put his fingers in her vagina, which would be in contrast with her testimony at trial that he *did* insert his fingers into her vagina. The practical implication would be that, without insertion, he could not be convicted of rape under R.C. 2907.02(A)(1)(b) as sexual *conduct* is necessary. *See* R.C. 2907.01(A) (defining "sexual conduct" as the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another).

{¶ 11} During the cross-examination of Jennifer Knisley, a social worker who interviewed A.S. at CARE House, defense counsel handed the witness a compact disc in a paper sleeve that said: "CARE House Interview" with a case number written on it. Knisley stated that she did not recognize the handwriting or the case number, but speculated that, "depending on who wrote it, I would assume that's [A.S.'s] forensic interview." Trial. Tr. at 179. The disc was marked "Defendant's Exhibit A," but the video was never played. Counsel then, at the close of testimony, asked to have the entire disc admitted into evidence, a request that was denied by the trial court. The State asserts that the court was justified in its decision because Glenn's Exhibit A was not sufficiently authenticated.

{¶ 12} Before an exhibit, like the purported interview video, can be admitted, it must be authenticated. The threshold standard for authenticating evidence, however, is low. *State v. Norris*, 2016-Ohio-5729, 76 N.E.3d 405, ¶ 33 (2d Dist.). "Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be." *State v. Simmons*, 2d Dist. Montgomery No. 24009, 2011-Ohio-2068, ¶ 12. Here, it does not appear that Glenn was able to cross that

low threshold. Knisley was handed a disc in a sleeve with "CARE House Interview" written on it. The case number written on the sleeve was unrecognizable to Knisley as was the handwriting. The contents of the disc were never played, so without engaging in pure speculation, there was no way to say the exhibit was what it was purported to be. Glenn even concedes that "counsel failed to properly admit and authenticate the initial CARE House interview of the victim." Appellant's Brief at 13.

{¶ 13} The trial court also stated that, regardless of the authentication, it would not admit the entire video into evidence because much of the interview would likely be excluded due to its content. In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, the Ohio Supreme Court opined on the admissibility of statements made by minor sexual assault victims to workers at child advocacy centers. The Court explained that child advocacy centers are unique in that they are made up of multidisciplinary teams that cooperate so that the child is only interviewed once so that he or she will not have to retell the story multiple times. "[T]o ensure that the child victim goes through only one interview, the interviewer must elicit as much information from the child as possible in a single interview. * * * Thus, the interview serves dual purposes: (1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim." *Id.* at 33. Statements that are made for the purpose of medical diagnosis and treatment are admissible in court, but those statements made that serve primarily a forensic or investigative purpose are not. *Id.* at ¶ 44.

{¶ 14} Here, the court told Glenn that it would allow portions or clips of the video

to be played if they were for purposes of medical treatment and diagnosis, but the entire interview would be off-limits – a choice that comports with the *Arnold* decision. Glenn, as a result, could have chosen to play portions of A.S.'s video interview, but he did not; neither did he proffer any of the statements he wanted introduced as evidence.

{¶ 15} We conclude that the trial court did not abuse its discretion because Defense Exhibit A was not properly authenticated and because the trial court's decision to disallow the *entire* video aligned with *Arnold*. Glenn's first assignment of error is overruled.

### III.    Courtroom Technological Difficulties

{¶ 16} In his second assignment of error, Glenn asserts that the court should have sua sponte declared a mistrial due to faulty courtroom equipment. This assignment of error arises from technological issues experienced by the microphone at the defense table. Throughout the testimonies of State's first and second witnesses (A.S. and Mother), the courtroom recording equipment picked up conversations and comments made by Glenn and his counsel. He claims that those comments and conversations were amplified into the jury box and, thus, he did not receive a fair trial.

{¶ 17} At the outset, we note that Glenn did not request a mistrial, and as a result, he has waived all but plain error. *State v. Artz*, 2015-Ohio-5291, 54 N.E.3d 784, ¶ 49 (2d Dist.). Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 18} A trial court may grant a mistrial sua sponte when there is a manifest necessity or when "the ends of public justice would otherwise be defeated." *State v. Howard*, 2d Dist. Montgomery No. 18884, 2002 WL 1332522, * 3 (June 14, 2002), quoting *Cleveland v. Walters*, 98 Ohio App.3d 165, 168, 648 N.E.2d 37 (8th Dist.1994). Therefore, before declaring a mistrial, the trial court "must engage in a scrupulous search for alternatives to deal with the problem concerned, and that search must reveal a manifest necessity for a mistrial and/or that failure to order a mistrial would defeat the ends of justice. In other words, a mistrial should only be ordered as a last resort." *State v. Gunnell*, 2d Dist. Clark No. 2009-CA-13, 2010-Ohio-4415, ¶ 193.

{¶ 19} The transcript reveals that Glenn and, to a much lesser extent, his attorney were recorded talking out loud during the testimony of A.S. and Mother. The first interaction was recorded during the cross-examination of A.S. where Glenn and counsel can be heard conferring:

Counsel:    She has already (indiscernible – coughing in the background), the things that she said (indiscernible).

Glenn:    That's what I'm saying (indiscernible), why don't you address it because it's * * * in the reports that what she's saying * * * is a lie.

Counsel:    Yeah, I understand that.

Glenn:    (Indiscernible). She said she went to the bathroom first.

Trial Tr. at 66-67. Following this exchange, the court informed them that the microphone was picking up their voices. A short time later, the transcript reflects that Glenn drew

counsel's attention to an alleged inconsistency in A.S.'s story. The rest of the transcribed words from Glenn could best be described as commentary and/or outbursts. For instance, during the cross-examination of Mother, Glenn was transcribed as saying, "You're caught. We got – we got you" after a purported contradiction about what love interest of Robert's was at her house that evening. Trial Tr. at 96. The comments continued:

Glenn:      Excuse me, Carl. I'm sorry, here you go. It's another picture.

Counsel:      That's the same picture (indiscernible).

Glenn:      'Cause Antonio got a bald head.

Trial Tr. at 97. The rest of Mother's testimony featured a mostly indiscernible running commentary from Glenn that culminated with, "I can't believe this sh*t." Trial Tr. at 101.

{¶ 20} At the conclusion of Mother's testimony, out of the presence of the jury, the trial court addressed the situation. "I need you to not speak, react, have bodily movements or otherwise, about testimony that is being said or otherwise. And if you do need to speak to your attorney, by all means, talk to your attorney, but wait until he comes back to the table so we can make sure that you can speak in private. And until that microphone can be muted, we'll put the white noise on so that that can happen, okay." Trial Tr. at 111. After that, the record is silent as to other comments made by Glenn; it appears that the next six witnesses testified free from interruptions.

{¶ 21} Glenn's main argument is that he was deprived of a fair trial because his consultations with his attorney, at least through the first two witnesses, were amplified for the jury to hear. There are at least two problems with that argument. First and foremost, there is no evidence that the jury heard what was said. Simply because the conversations

and comments were picked up by the recording device does not mean they were projected to the jury. Glenn offers no evidence that what he and his attorney said were heard in the jury box, and after listening to the audio recording of the trial, it is clear to us that almost nothing that was said by Glenn or his attorney could be understood. The audio that was picked up was almost exclusively indiscernible whispering.

{¶ 22} Second, assuming for the sake of argument that the jury did hear the comments, Glenn cannot demonstrate that the outcome of his trial would have been different as required by plain error review. Almost everything Glenn was recorded to have said could be categorized as commentary or reaction. The comments which could be heard were almost exclusively critical of the veracity of A.S. and Mother and were not admissions or inculpatory in any way. Glenn has offered no evidence that the jury heard his comments, let alone that the result of the trial would have been different assuming they did. The trial court's failure to sua sponte declare a mistrial did not create a manifest miscarriage of justice. Glenn's second assignment of error is overruled.

### IV. Ineffective Assistance of Counsel

{¶ 23} Glenn avers in his third assignment of error that he was denied the effective assistance of counsel when his trial attorney failed to impeach A.S. with a purported prior inconsistent statement. He specifically takes aim at his attorney's failure to properly authenticate and admit the CARE House video interview discussed in the first assignment of error.

{¶ 24} To prevail on his ineffective assistance of counsel claim, Glenn must prove that his attorney was ineffective under the standard test from *Strickland v. Washington*,

466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To do so, he must prove that his counsel's performance was deficient and that he was prejudiced by that performance. *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10. "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id*. The failure to meet either prong is fatal to an ineffective assistance of counsel claim. *Strickland* at 697.

{¶ 25} In this case, Glenn raises a reasonable criticism of trial counsel; counsel could have done a better job of laying a foundation to authenticate the exhibit he was attempting to get into evidence. But even if the disc had been authenticated, it would not inevitably follow that the entire interview would have been admissible. The trial court was clear that it did not intend to admit the entire video due to its concerns about the nature of the content and its admissibility under *Arnold*. The questions asked and statements made for medical diagnosis purposes would have been admissible, but those made for investigative purposes would not.

{¶ 26} Further, even if the entire video had been played, it is clear after viewing A.S.'s interview that there would have been no contradictions with which to impeach her. During the conversation with the CARE House social worker, A.S. recounted that Glenn did more than just *touch* her "private area," he, in fact, *inserted* his finger into her vagina. Video Interview at 26:10-26:16. A.S. confirmed at trial what she had said in the video, i.e., that Glenn had engaged in sexual *conduct*, not just *contact*. Trial counsel could not have been ineffective in this regard.

**{¶ 27}** Glenn cannot establish that "but for counsel's error, the result of the proceeding would have been different." *Davis* at ¶ 10. His third assignment of error is overruled.

### V. Conclusion

**{¶ 28}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Daniel F. Getty
Hon. Mary E. Montgomery