[Cite as *State v. Stapleton*, 2020-Ohio-4479.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :          Case No.   19CA7

    vs.                              :

JVON STAPLETON,                         :          DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.             :

_____

APPEARANCES:

Jerry L. McHenry, Pickerington, Ohio, for appellant.

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Heather MJ Carter, Assistant Pickaway County Prosecuting Attorney, Circleville, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:   9-10-20
ABELE, J.

{¶ 1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence.   Jvon Stapleton, defendant below and appellant herein, assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY PERMITTING THE INTRODUCTION OF HEARSAY EVIDENCE BY DETECTIVE MAHER.  THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL, DUE PROCESS OF LAW, HIS RIGHT TO CONFRONT WITNESSES AND EQUAL PROTECTION OF THE LAW WHEN THE DETECTIVE TESTIFIED AS TO HEARSAY EVIDENCE, WHICH WAS EVIDENCE SPOKEN OR WRITTEN BY SOME OTHER PERSON(S) WHO WERE NOT PRESENT AND WHO DID NOT TESTIFY. THIS WAS IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND

FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

SECOND ASSIGNMENT OF ERROR:

"EVIDENCE OF THE PUTATIVE CELL PHONE, CELL PHONE EXTRACTIONS, TEXT MESSAGES A FACEBOOK ACCOUNT, AND A VIDEO RECORDING OF C.D. MASTURBATING WERE NOT PROPERLY AUTHENTICATED AS TO ORIGIN AND ACCURACY. THEY WERE IMPROPERLY ADMITTED INTO EVIDENCE AND DENIED APPELLANT HIS RIGHTS OF CONFRONTATION OF WITNESSES, AND A FAIR TRIAL IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO MULTIPLE CONSECUTIVE PRISON TERMS WHEN THOSE FELONY COUNTS WERE ALLIED OFFENSES OF SIMILAR IMPORT, ALL INVOLVING THE SAME ANIMUS. THIS WAS IN VIOLATION OF OHIO REVISED CODE SECTION 2941.25. THIS WAS A VIOLATION OF APPELLANT'S RIGHT TO BE FREE FROM DOUBLE JEOPARDY, A FAIR TRIAL, AND DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAW AS GUARANTEED HIM BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

FOURTH ASSIGNMENT OF ERROR:

"DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL TO THE APPELLANT BY FAILING TO OBJECT TO THE HEARSAY EVIDENCE AND THE UNAUTHENTICATED EVIDENCE, ALONG WITH FAILING TO OBJECT TO THE ADMISSION INTO EVIDENCE OF SIXTY-EIGHT (68) DIFFERENT EXHIBITS, ALL OF WHICH WERE PREDICATED UPON HEARSAY EVIDENCE OR UNAUTHENTICATED EVIDENCE. DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO CONSECUTIVE SENTENCES IMPOSED UPON APPELLANT. THIS WAS A DENIAL OF APPELLANT'S RIGHT TO COUNSEL, A FAIR TRIAL, DUE PROCESS OF LAW AND EQUAL PROTECTIONS OF LAW GUARANTEED HIM BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶ 2} On September 7, 2018, a Pickaway County grand jury returned an indictment that charged appellant with forty-three counts arising out of his communications with a minor. Counts one through nineteen charged appellant with pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5). Counts twenty through thirty-eight charged appellant with illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.322(A)(5). Counts thirty-nine and forty charged appellant with pandering sexually oriented matter involving a minor. Counts forty-one and forty-two charged appellant with disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(1). Count forty-three charged appellant with attempted unlawful sexual conduct with a minor, in violation of R.C. 2923.02(A) and 2970.04(A). Appellant entered not guilty pleas to all counts.

{¶ 3} At trial, Circleville Police Detective Dan Maher testified that he is a member of the Franklin County Internet Crimes Against Children Task Force. Maher stated that task force members receive specialized training involving internet crimes against children and that the training includes cell phone forensics and procedures for analyzing and reviewing physical evidence. Maher stated that he has received data recovery certification for cell phones. After this initial inquiry, the trial court granted the state's request to qualify the detective as an expert in cell phone forensics and analysis.

{¶ 4} Detective Maher explained that on July 16, 2018, he obtained appellant's cell phone and "immediately put it in airplane mode." The detective stated that placing the phone in airplane mode would keep the phone in the same condition as when he recovered it. Maher related that, upon viewing the cell phone, he observed a picture of a naked female who appeared to be a minor.

PICKAWAY, 19CA7

He thus took the phone to the police department and docketed it into evidence. The detective also sent a preservation request to Facebook.

{¶ 5} Detective Maher stated that he subsequently identified the minor as C.D. by taking a screenshot of her Facebook account that he found on appellant's cell phone. The detective contacted another detective who lived near the minor and asked this detective to reach out to the family. This other detective then obtained the minor's cell phone and gave it to Maher. Maher further explained that he spoke with the minor and confirmed that she was under the age of eighteen and that she is the individual depicted in the photographs found on appellant's cell phone. Detective Maher also performed a cell phone extraction of the minor's phone.

{¶ 6} Detective Maher indicated that when he extracted information from both appellant's and the minor's phone, he used a "cellebrite device, which is the most used cellular forensic tool." Maher related that the device reads the cell phone data and copies it.

{¶ 7} Detective Maher stated that after he extracted the data, he performed a search and generated a report of the conversations between appellant and the minor. The detective testified that the conversations began on July 14, 2018, at 1:24:50 a.m., when appellant sent a message to the minor that stated, "Hi this is Jay from Meet 24 [sic]." Maher explained that "Meet 24" is a dating cell phone application. After appellant sent his message, the minor responded, "Hi Jay." The two continued to exchange messages, and appellant eventually asked the minor to "send me some pictures please nothing bad [sic]." The conversation continued, and appellant kept pressing the minor to send him more and more photos in various states of undress. With each request, appellant asked the minor to expose more nudity. At first, appellant requested the minor send him photographs showing the victim wearing undergarments. Later, he asked the victim to send him

a photograph that shows the victim with her legs spread without undergarments. The victim also sent appellant two videos that showed the victim masturbating. Additionally, appellant sent photographs of himself in various states of undress, as well as close-up photographs of his penis. All together, appellant sent the victim ten photographs of himself, either completely naked or of his erect penis. The victim sent appellant nineteen images that either depicted her vagina, breasts, or otherwise depicted her as nude.

{¶ 8} At the close of the evidence, the state asked the court to amend the indictment by dismissing count forty-three, attempted unlawful sexual conduct with a minor in violation of R.C. 2923.02(A) and 2970.04(A). The court granted the motion. Subsequently, the jury found appellant guilty of all offenses except count forty-two, one of the disseminating-matter-harmful-to-juveniles offenses.

{¶ 9} On February 25, 2019, the trial court sentenced appellant. The court first determined that the illegal-use-of-a-minor offenses merged with the pandering-obscenity-involving-a-minor offenses. The court ordered appellant to serve eighteen months in prison for each of the nineteen pandering obscenity offenses and for the two pandering sexually oriented matter involving a minor offenses. The court sentenced appellant to twelve months in prison for the disseminating matter harmful to juveniles offense. The court further ordered appellant to serve all of the sentences consecutively for a total sentence of three hundred ninety months. This appeal followed.

I

{¶ 10} Appellant's first and second assignments of error challenge the admission of certain evidence. For ease of discussion, we consider the assignments of error together.

{¶ 11} In his first assignment of error, appellant argues that the trial court erred by allowing the state to introduce inadmissible hearsay evidence at trial. Appellant contends that Detective Maher based most of his testimony on hearsay. Appellant notes that the detective based his testimony upon cell phone extractions, text messages, and information obtained from Facebook. Appellant asserts that all of the digital evidence obtained from the cell phone and from Facebook constitutes hearsay evidence, and that none of the exceptions to the hearsay rules allowed the state to introduce the evidence at trial. Appellant additionally alleges that allowing the state to introduce the evidence violated his right to confront the witnesses against him.

{¶ 12} In his second assignment of error, appellant contends that the state did not properly authenticate the evidence obtained from the cell phones or from Facebook.

{¶ 13} Appellant also recognizes that trial counsel did not object to the admission of the evidence at trial, but argues that trial counsel's failure to object means that appellant did not receive a fair trial.

A

{¶ 14} We first observe that Evid.R. 103(A)(1) provides that "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and, "[i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." We additionally note that appellate courts """"will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.""" *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15,

quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Appellate courts nevertheless have discretion to consider forfeited issues using a plain-error analysis. *E.g., Risner v. Ohio Dept. of Natural Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27; *Quarterman* at ¶ 16. Crim.R. 52(B) provides appellate courts with discretion to correct "[p]lain errors or defects affecting substantial rights." "To prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights," i.e., the trial court's error must have affected the outcome of the trial. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 62, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "We take '[n]otice of plain error * * * with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Obermiller* at ¶ 62, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

{¶ 15} In the case sub judice, as we explain below, even if we assume for purposes of argument that the trial court plainly erred, the failure to notice the error will not result in a manifest miscarriage of justice in the case sub judice.

B

{¶ 16} "'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Dean*, 146 Ohio St.3d 106, 2015–Ohio–4347, 54 N.E.3d 80, ¶ 91, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Consequently, "a reviewing court should not disturb evidentiary decisions in the absence of an

abuse of discretion that created material prejudice." *State v. Morris*, 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 14, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008–Ohio–6266, 900 N.E.2d 565, ¶ 66; *accord State v. Adams*, 2015–Ohio–3954, ¶ 198, 144 Ohio St.3d 429, 45 N.E.3d 127, citing *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). "An abuse of discretion is more than a mere error of law or judgment." *State v. Thompson*, 141 Ohio St.3d 254, 23 N.E.3d 1096, 2014–Ohio–4751, 23 N.E.3d 1096, ¶ 91; *accord State v. Johnson*, 144 Ohio St.3d 518, 2015–Ohio–4903, 45 N.E.3d 208, ¶ 75. Instead, "'[a] trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary.'" *State v. Keenan*, 143 Ohio St.3d 397, 2015–Ohio–2484, 38 N.E.3d 870, ¶ 7, quoting *State v. Darmond*, 135 Ohio St.3d 343, 2013–Ohio–966, 986 N.E.2d 971, ¶ 34. An abuse of discretion includes a situation in which a trial court did not engage in a "'sound reasoning process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012–Ohio–2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Moreover, "[a]buse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 34.

C

{¶ 17} We observe that appellant does not cite to the portions of the record where he alleges error occurred, nor does he pinpoint the testimony or exhibits that contain the alleged inadmissible hearsay, or the exhibits that the state allegedly failed to properly authenticate. Instead, appellant generally asserts that the trial court should not have admitted statements, photographs, and other information derived from his and the victim's cell phone and from Facebook on the basis of hearsay and improper authentication.

{¶ 18} We point out, however, that for each assignment of error presented for review, an appellant must identify the specific parts of the record where the alleged error occurred. *See* App.R. 16(A)(3) (stating that an appellant's brief must include "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected"); App.R. 16(A)(7) (requiring that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies"). "This rule is designed 'to aid the reviewing court in determining whether any reversible error occurred in the lower court by having the complaining party specify the exact location(s) where such a determination can be made.'" *Mayfair Village Condominium Owners Assn. v. Grynko*, 8th Dist. Cuyahoga No. 99264, 2013-Ohio-2100, 2013 WL 2291876, ¶ 6, quoting *Hildreth Mfg. v. Semco, Inc.*, 151 Ohio App.3d 693, 2003-Ohio-741, 785 N.E.2d 774, ¶ 32 (3d Dist.).

{¶ 19} An appellate court may disregard an assignment of error when the appellant fails to identify the relevant portions of the record upon which an assignment of error is based. *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *."); *see also Mayfair Village Condominium Owners Assn.* at ¶ 6, citing *Nob Hill E. Condominium Assn. v. Grundstein*, 8th Dist. Cuyahoga No. 95919, 2011-Ohio-2552, 2011 WL 2112734, ¶ 11 (stating that an appellate court is "not obliged to scour the record in search of evidence to support an appellant's assignment of error").

{¶ 20} In the case sub judice, appellant's failure to cite to specific portions of the transcript where error allegedly occurred, or to the exhibits that appellant believes the trial court should not have admitted, means that this court could simply disregard appellant's first and second assignments of error. However, we will nevertheless attempt to ascertain whether the trial court plainly erred, as a general matter, by allowing the state to introduce the items of evidence derived from the cell phones and Facebook records.

D

{¶ 21} Appellant first contends that the evidence obtained from the cell phone records and from Facebook constitutes inadmissible hearsay.

{¶ 22} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmissible at trial, unless it falls under an exception to the Rules of Evidence. Evid.R. 802; *State v. Maxwell*, 139 Ohio St.3d 12, 2014–Ohio–1019, 9 N.E.3d 930 (2014), ¶ 129; *State v. Lykins*, 4th Dist. Adams No. 18CA1079, 2019-Ohio-3316, 2019 WL 3891146, ¶ 92.

{¶ 23} Evid.R. 801(D)(2)(a) further provides that "[a] statement is not hearsay if * * * * [t]he statement is offered against a party and is (a) the party's own statement."

{¶ 24} In the case sub judice, any of the cell phone and Facebook records that contain appellant's own statements are not hearsay under Evid.R. 801(D)(2)(a). We observe that the state presented evidence that consisted of appellant's own statements in the form of text messages and images that appellant generated. Thus, because the evidence contained appellant's own statements, the evidence is not hearsay evidence. *State v. Inkton*, 8th Dist. No. 102706, 2016-Ohio-693, 60 N.E.3d 616, 2016 WL 762580, ¶¶ 89-90 (noting that defendant's Facebook

posts admissible as statement by party opponent); *State v. Shaw*, 7th Dist. Mahoning No. 12 MA 95, 2013–Ohio–5292, ¶ 43 (stating that "photographs of the text messages can be admissible as an admission by a party-opponent under Evid.R. 801(D)(2)(a) if they are properly authenticated"). Consequently, the trial court did not plainly err by allowing the state to introduce cell phone records and Facebook posts that contained appellant's own statements.

{¶ 25} To the extent the victim's cell phone records, or any of the victim's other electronic messages or images, constitute hearsay, we do not believe that the trial court plainly erred by admitting into evidence the victim's statements or electronic images. We note that the victim sent the statements and photographs after appellant asked the victim to send him photographs that shows the victim in various states of undress. Appellant solicited the images, and the images were recovered during appellant's cell phone extraction. "Multiple courts have held that text messages received on a defendant's cell phone are not hearsay when the messages are not offered for the truth of the matter asserted." *State v. Norris*, 2nd Dist. No. 2015-CA-22, 2016-Ohio-5729, 76 N.E.3d 405, 2016 WL 4728447, ¶ 32, citing *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369 (4th Dist.) (incriminating text messages received on the defendant's cell phone were extracted by a forensic computer specialist from the Ohio State Highway Patrol and the court held the messages were not hearsay because they were not offered to prove the truth of the matter asserted, but rather to explain the defendant's activities and give context to the defendant's responses). We additionally note that "[v]erbal acts may be admitted to explain an actor's conduct in reaction to the statements, to show the effect on the hearer, and to show the mental state of the declarant." *State v. Ciacchi*, 8th Dist. Cuyahoga No. 92705, 2010–Ohio–1975, ¶ 20, citing *State v. Williams*, 38 Ohio St.3d 346, 348, 528 N.E.2d 910 (1988), fn. 4.

{¶ 26} We further observe that appellant's brief does not contain a complete argument that explains the reasons why he believes that photographs, recovered from appellant's phone that depict the victim, constitute inadmissible hearsay. Instead, appellant generally asserts that all of the electronic evidence constitutes hearsay and that admitting the evidence violated his right to confront the witnesses against him. Without additional citation to authority or supporting argument, however, we are unable to conclude that any error that the court may have arguably made by admitting photographs that the victim sent appellant via electronic means constitutes an obvious error.

E

{¶ 27} Appellant next asserts that the trial court should have recognized that admitting into evidence the text messages, photographs, and other digital evidence violated his right to confront the witnesses against him.

{¶ 28} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those "who 'bear testimony'" against him. *Id.* at 51. The clause essentially "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The clause thus protects a defendant's rights to "'physically * * * face those who testify against him, and * * * to conduct cross-examination.'" *Id.* at 1017, quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). A testimonial out-of-court statement of a witness who does not

appear at trial thus is inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), citing *Crawford*, 541 U.S. at 54.

{¶ 29} *Crawford* defined "testimony" as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact" and held that the Confrontation Clause applies to those who "bear testimony." *Crawford* at 51, 124 S.Ct. 1354. Although *Crawford* did not define "testimonial," it stated that the core class of statements implicated by the Confrontation Clause includes statements made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for use at a later trial. [*State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930] at ¶ 35. Later decisions applying *Crawford* have explained that "testimonial statements are those made for 'a primary purpose of creating an out-of-court substitute for trial testimony.'" *Maxwell* at ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011)." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 212, reconsideration denied, 154 Ohio St.3d 1522, 2019-Ohio-769, 118 N.E.3d 259, and cert. denied, 140 S.Ct. 206, 205 L.Ed.2d 94 (2019); *accord State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 87. Thus, the inquiry focuses on whether the primary purpose of the statement was testimonial. *Ohio v. Clark*, — U.S. —, 135 S.Ct. 2174, 2180, 192 L.Ed.2d 306 (2015) (stating that "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial").

{¶ 30} In the case at bar, assuming, arguendo, that the victim's text messages, photographs, and other digital evidence may constitute hearsay, we note that appellant has not raised any argument to explain why this evidence is testimonial in nature. Appellant has not argued that the

primary purpose of the text messages, photographs, and other digital evidence was to create an out-of-court substitute for trial testimony. Instead, he states in a conclusory fashion that the evidence is "testimonial in nature."

{¶ 31} Appellant also has not cited any authority to state that a victim's text messages and photographs sent to a defendant via an electronic medium constitute inadmissible hearsay and that admitting this type of evidence violates the Confrontation Clause. We will not perform independent research in order to create an argument for appellant. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (stating that """"appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them"""") (brackets sic.); *accord State v. Lykins*, 4th Dist. Adams No. 18CA1079, 2019-Ohio-3316, 2019 WL 3891146, ¶ 57. Consequently, we reject appellant's argument that admitting the text messages, photographs, and other digital evidence violated his rights under the Confrontation Clause.

{¶ 32} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

F

{¶ 33} In his second assignment of error, appellant asserts that the trial court plainly erred by admitting into evidence the digital evidence without requiring the state to authenticate the evidence.

{¶ 34} Before a trial court may admit evidence, Evid.R. 901 requires the proponent to identify or authenticate the evidence. Evid.R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(B) outlines a non-exclusive list of the means by which a proponent may demonstrate authenticity. *See id.* (stating that the examples listed in the rule serve as "illustration only" and not as limitations). For instance, a proponent may identify or authenticate evidence by presenting "[t]estimony that a matter is what it is claimed to be." Evid.R. 901(B)(1).

{¶ 35} Circumstantial, as well as direct, evidence may be used to show authenticity. *State v. Reno*, 4th Dist. Ross No. 04CA2759, 2005–Ohio–1294, ¶ 18. Moreover, the threshold standard for authenticating evidence pursuant to Evid.R. 901(A) is low, and "'does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that * * * [the evidence] is what its proponent claims it to be.'" *Reno* at ¶ 18, quoting *State v. Easter*, 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (4th Dist.1991); *Wellston v. Brown*, 4th Dist. Jackson No. 03CA25, 2005–Ohio–532, ¶ 18; *accord State v. Horton*, 8th Dist. Cuyahoga No. 101100, 2015–Ohio–99, ¶ 19, quoting *State v. Roseberry*, 197 Ohio App.3d 256, 2011–Ohio–5921, 967 N.E.2d 233, ¶ 65 (8th Dist.) (stating that the proponent "only needs to demonstrate a 'reasonable likelihood' that the evidence is authentic").

{¶ 36} In the case sub judice, appellant seems to assert that the state did not properly authenticate the evidence obtained from appellant's or the victim's Facebook account, and did not properly authenticate that the cell phones from which Detective Maher extracted the information belonged to appellant and to the victim. We again note that appellant does not cite to a specific

PICKAWAY, 19CA7

part of the transcript where error occurred, or to an exhibit number that he believes should not have been admitted into evidence. Thus, in light of appellant's failure to cite to particular parts of the record we could simply disregard this assignment of error. We, however, will nevertheless attempt to ascertain whether the trial court plainly erred by not inquiring whether the state had authenticated the cell phone and Facebook evidence.

{¶ 37} First, we reject appellant's assertion that the state failed to authenticate that the cell phone introduced as appellant's cell phone was, in fact, appellant's cell phone. As the state points out, appellant stipulated that the phone belonged to him. Thus, appellant's argument that the state failed to properly authenticate the phone as belonging to him is meritless.

{¶ 38} Next, we do not agree with appellant that the state failed to authenticate the evidence obtained from Facebook. Other courts, including this court, have considered similar issues that involve the authentication of social media evidence. In *Oldaker*, we explained:

> "Facebook has been described as 'a widely-used social-networking website * * * that allows users to connect and communicate with each other.'" *State v. Gibson*, 6th Dist. Lucas Nos. L–13–1222 and L–13–1223, 2015–Ohio–1679, ¶ 34, quoting *Ehling v. Monmouth–Ocean Hosp. Service Corp.*, 961 F.Supp.2d 659, 662 (D.J.N.J.2013). Facebook users often post content on the user's profile page, which delivers it to the user's subscribers. *Gibson* at ¶ 35, citing *Parker v. State*, 85 A.3d 682, 686 (Del.2014). "These posts often include information relevant to a criminal prosecution: 'party admissions, inculpatory or exculpatory photos, or online communication between users.'" *Gibson* at ¶ 35, quoting *Parker* at 686. "Authentication concerns arise in regard to printouts from Facebook 'because anyone can create a fictitious account and masquerade under another person's name or can gain access to another's account by obtaining the user's username and password,' and, consequently, '[t]he potential for fabricating or tampering with electronically stored information on a social networking [site]' is high." *Gibson* at ¶ 35, quoting *Griffin v. State*, 19 A.3d 415, 421 (Md.2011).

*State v. Oldaker*, 4th Dist. Meigs No. 16CA3, 2017-Ohio-1201, 2017 WL 1193818, ¶ 23.

{¶ 39} In *State v. Croghan*, 9th Dist. No. 29290, 2019-Ohio-3970, 133 N.E.3d 631, 370 Ed. Law Rep. 1120, 2019 WL 4751863, the court determined that screenshots of the defendant's Facebook posts were properly authenticated even though the state did not subpoena information from Facebook or from the internet service provider to link the posts to the defendant. In *Croghan*, the defendant's school principal testified that the principal took screenshots of the defendant's Facebook posts. A detective spoke to the defendant, and the defendant admitted that the posts were hers. The court determined that the foregoing testimony allowed the jury to determine that the screenshots were authentic and that the trial court did not abuse its discretion by admitting the evidence.

{¶ 40} In *State v. Fannon*, 4th Dist. No. 17CA24, 2018-Ohio-5242, 117 N.E.3d 10, 2018 WL 6813951, ¶ 89, this court concluded that the state properly authenticated photographs of text messages obtained from a cell phone when the investigator testified that the state's exhibit contained photographs of text messages she took from one of the phones the defendant and her co-defendant turned over to investigators. We determined that the investigator's testimony satisfied the authentication requirement.

{¶ 41} Moreover, we observe that some courts have held that text messages obtained from a cell phone extraction tool, like the Cellebrite tool that the detective used in the case at bar, satisfies the authentication requirement. *State v. Johnson*, 7th Dist. Mahoning No. 17 MA 0050, 2019-Ohio-1089, 2019 WL 1400096, ¶ 34; *see generally State v. Shine*, 8th Dist. No. 105352, 2018-Ohio-1972, 113 N.E.3d 160, 2018 WL 2278171, ¶¶ 98-99; *State v. Calhoun*, 8th Dist. Cuyahoga No. 105442, 2017-Ohio-8488, 2017 WL 5192435; *State v. Durham*, 2016-Ohio-691,

60 N.E.3d 552 (8th Dist.); and *State v. McMiller*, 8th Dist. Cuyahoga No. 103962, 2016-Ohio-5844, 2016 WL 4979497.

{¶ 42} After our review, we do not believe that the trial court obviously erred in the case sub judice by allowing the state to introduce evidence extracted from the cell phones and from Facebook. In accordance with the authority set forth above, we believe that the state satisfied the low threshold for authenticating the evidence. Detective Maher stated that he identified the victim from viewing her profile on Facebook, that he obtained her cell phone, and that he later spoke with the victim. Maher explained that the victim confirmed that she is the individual depicted in the photographs and videos, and that she sent the text and Facebook messages to appellant. Additionally, Maher testified that he used Cellebrite to extract the information from the cell phones. Because Maher's testimony shows that the state satisfied the low threshold for authenticating evidence, the trial court did not obviously err by allowing the state to introduce the evidence.

{¶ 43} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

II

{¶ 44} In his third assignment of error, appellant asserts that the trial court erred by sentencing him to serve multiple prison terms for the nineteen pandering-obscenity offenses. Appellant argues that all of the pandering obscenity offenses were committed with the same animus, involved the same victim, the same act and occurred on the same date. Appellant likewise contends that the two pandering-sexually-oriented-matter-involving-a-minor offenses were committed with the same animus, involved the same victim, and occurred on the same date.

Appellant thus claims that the trial court erroneously imposed multiple sentences for counts 1 through 19 and for counts 39 and 40.

{¶ 45} We initially note that because appellant did not argue before the trial court that the offenses should merge, he has forfeited the right to raise this issue on appeal. We may, however, review this assignment of error using a plain-error analysis. *Quarterman* at ¶ 15 and 16; *Risner* at ¶ 27. We again note that "[t]o prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights," i.e., the trial court's error must have affected the outcome of the trial. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 62, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.

{¶ 46} A defendant demonstrates plain error by showing that a trial court imposed multiple sentences for allied offenses of similar import. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, 2010 WL 45973, ¶ 31 (stating that "a defendant is prejudiced by having more convictions than are authorized by law"). A defendant cannot, however, establish plain error based upon a bare allegation that the trial court failed to inquire whether offenses merge. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 1 and ¶ 3; *accord State v. Daniels*, 1st Dist. Hamilton No. C-160203, 2017-Ohio-548, 2017 WL 657574, ¶ 14. Instead, in order to establish that the trial court plainly erred by failing "to inquire whether the convictions merge for purposes of sentencing," the defendant must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *Rogers* at ¶ 3; *accord State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 25.

{¶ 47} In the case sub judice, appellant has not argued plain error on appeal. This court ordinarily declines to develop a plain-error argument for an appellant who fails to do so. *E.g., State v. Dailey*, 4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, 2018 WL 5314869, ¶ 23, citing *Redmond v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, 2017 WL 2257731, ¶ 34; *accord Quarterman, supra*; *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9 (explaining that reviewing court will not craft plain-error argument for an appellant who fails to raise one).

{¶ 48} Nevertheless, after our review, we do not believe that the record demonstrates a reasonable probability that appellant's convictions are for allied offenses of similar import, committed with the same conduct and with the same animus.

{¶ 49} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010–Ohio–1, 922 N.E.2d 923, ¶ 23; *accord State v. Miranda*, 138 Ohio St.3d 184, 2014–Ohio–451, 5 N.E.3d 603; *State v. Washington*, 137 Ohio St.3d 427, 2013–Ohio–4982, 999 N.E.2d 661, ¶ 11. The statute provides:

> (A) Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 50} For purposes of R.C. 2941.25 "a 'conviction' consists of a guilty verdict and the imposition of a sentence or penalty." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12; *accord State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 17. Consequently, "R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions." *Whitfield* at ¶ 18. Accordingly, "once the sentencing court decides that the offender has been found guilty of allied offenses of similar import that are subject to merger, R.C. 2941.25 prohibits the imposition of multiple sentences." *Williams* at ¶ 19 (citation omitted). The sentencing court thus has a mandatory duty to merge allied offenses. *Id.* at ¶ 27. "[I]mposing separate sentences for allied offenses of similar import is contrary to law and such sentences are void." *Id.* at ¶ 2. Therefore, "a judgment of sentence is void * * * when the trial court determines that multiple counts should be merged but then proceeds to impose separate sentences in disregard of its own ruling." *State ex rel. Cowan v. Gallagher*, 153 Ohio St.3d 13, 2018-Ohio-1463, 100 N.E.3d 407, ¶ 19, citing *Williams* at ¶ 28–29.

{¶ 51} Courts conduct a three-part inquiry to determine whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *State v. Earley*, 145 Ohio St.3d 281, 2015–Ohio–4615, 49 N.E.3d 266, ¶ 12, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892, ¶ 31 and paragraphs one, two, and three of the syllabus.

{¶ 52} Offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." *Ruff* at ¶ 21. Additionally, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. We further note that the defendant bears the burden to establish that R.C. 2941.25 prohibits multiple punishments. *State v. Washington*, 137 Ohio St.3d 427, 2013–Ohio–4982, 999 N.E.2d 661, ¶ 18, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987).

{¶ 53} In the case at bar, after our review we are unable to conclude that the trial court plainly erred by imposing multiple punishments for the pandering-obscenity offenses and for the pandering-sexually-oriented-matter-involving-a-minor offenses. Instead, we believe that the record supports a finding that each of the offenses resulted in a separate and identifiable harm.

{¶ 54} Ohio courts have found that child pornography offenses are offenses of dissimilar import when each offense involves a separate file or image. "Each child pornography file or image that is downloaded is 'a new and distinct crime.'" *State v. Mannarino*, 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795, 2013 WL 1859026, ¶ 53, quoting *State v. Eal*, 10th Dist. No. 11AP–460, 2012–Ohio–1373, ¶ 93; *accord State v. Davis*, 8th Dist. Cuyahoga No. 105523, 2017-Ohio-9169, 2017 WL 6539300, ¶ 42. "[M]ultiple convictions are allowed for each individual image because a separate animus exists every time a separate image or file is downloaded and saved." *State v. Mannarino*, 8th Dist. Cuyahoga No. 98727, 2013-Ohio-1795,

2013 WL 1859026, ¶ 53, quoting *State v. Hendricks*, 8th Dist. No. 92213, 2009–Ohio–5556, ¶ 35, citing *State v. Stone*, 1st Dist. No. C–040323, 2005–Ohio–5206; *State v. Yodice*, 11th Dist. No.2001–L–155, 2002–Ohio–7344; *accord State v. Hipps*, 7th Dist. No. 16 MA 0098, 2017-Ohio-7707, 96 N.E.3d 1265, 2017 WL 4174827; *State v. Pippin*, 1st Dist. No. C-160380, 2017-Ohio-6970, 94 N.E.3d 1186, 2017 WL 3169055, ¶ 50; *State v. Starcher*, 5th Dist. No. 2015CA00058, 2015-Ohio-5250, 2015 WL 9078463.

{¶ 55} Courts have similarly held that multiple text messages or emails that involve child pornography may constitute offenses of dissimilar import.

{¶ 56} In *State v. Hines*, 8th Dist. Cuyahoga No. 90871, 2009-Ohio-2118, 2009 WL 1244164, ¶ 41, for example, the court determined that multiple importuning offenses were offenses of dissimilar import when the defendant sent one series of multiple text messages within an hour-long time span, a second series within a four-minute time span, and a third series within a five-minute time span.   In reaching its decision, the court relied upon an earlier decision that involved photographs taken in "quick succession," *State v. Blanchard*, Cuyahoga App. No. 90935, 2009–Ohio–1357.   The *Blanchard* court determined that "'the mere fact that the crimes occurred in quick succession * * * does not mean that they were not committed separately or with separate animus.'"   *Hines* at ¶ 42, quoting *Blanchard* at ¶ 12.

{¶ 57} The *Hines* court further pointed to a federal district court case in which the court rejected the argument that emails that contain child pornography sent within a forty-minute time span were part of the same transaction.   *United States v. Matthews*, 11 F.Supp.2d 656 (June 29, 1998).   The *Matthews* court explained:

> "a single email transmission is analogous to a single envelope placed in a mailbox.
> When a person attaches child pornography to an email message and sends it through

the phone wire, that person has just transported child pornography. If the person decides to send another message a minute later and attaches another picture, that is a separate act of transportation, regardless of the brief interval of time between transmissions and regardless of whether the transmissions are part of a single 'conversation.'"

*Hines* at 43, quoting *Matthews* at 659.

{¶ 58} The *Hines* court thus concluded that each text message that the defendant sent soliciting another to engage in sexual conduct resulted in a separate and identifiable harm. The court therefore determined that the allied offense statute did not prohibit multiple punishments for the offenses.

{¶ 59} In the case sub judice, the evidence reveals that appellant sent the victim multiple text messages, and solicited multiple photographs and a video, that all involve illicit sexual content. Appellant obtained nineteen separate and distinct pornographic images of the victim. Additionally, appellant viewed two videos that the victim sent to him in which the victim was masturbating. Each separate text message, photograph, and video resulted in a separate and identifiable harm. Appellant has not pointed to anything in the record to suggest a contrary conclusion. We therefore cannot conclude that the trial court plainly erred by sentencing appellant to multiple prison terms for the pandering-obscenity offenses and for the pandering-sexually-oriented-matter-involving-a-minor offenses.

{¶ 60} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

III

{¶ 61} In his fourth assignment of error, appellant asserts that trial counsel performed ineffectively by failing to object to (1) hearsay evidence, (2) unauthenticated evidence, and (3) the imposition of consecutive sentences for allied offenses of similar import.

{¶ 62} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) (explaining that the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶ 63} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

{¶ 64} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 571 U.S. at 273. Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.'" *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

{¶ 65} Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).

{¶ 66} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by

demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶ 67} We observe that the decision to object or not to object at trial ordinarily constitutes a question of trial strategy. *State v. Frierson*, 8th Dist. Cuyahoga No. 105618, 2018-Ohio-391, ¶ 25, citing *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. Accordingly, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *Conway* at ¶ 103.

> Experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, at ¶ 140.

{¶ 68} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 91 (indicating that prejudice component requires a "but for" analysis). "'[T]he question is whether there is a reasonable probability that, absent the errors, the

factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695. Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require the defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002); *see generally Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2008) (observing that prejudice may be presumed in limited contexts, none of which are relevant here). As we have repeatedly recognized, speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, 2017 WL 5641282, ¶ 34; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

{¶ 69} In light of our dispositions of appellant's first, second, and third assignments of error, we conclude that appellant's assertion that trial counsel provided ineffective assistance of counsel is without merit. Even if trial counsel performed deficiently in any manner, appellant cannot show that the outcome of the proceeding would have been different.

{¶ 70} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

PICKAWAY, 19CA7

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & *Myers, V.J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

PICKAWAY, 19CA7

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

\*Judge Beth A. Myers, First District Court of Appeals, sitting by assignment of the Ohio Supreme Court in the Fourth Appellate District.